**HAITIAN REFUGEE CENTER, INC.,**
**et al., Plaintiffs,**

**v.**

**William French SMITH, et**
**al., Defendants.**

**No. 79–2086–Civ.**

United States District Court,
S.D. Florida.

May 25, 1984.

Timothy Barker, Los Angeles, Cal., Thomas Hunt, Thomas R. Kline, Philadelphia, Pa., Ira Kurzban, Miami, Fla., Peter Schey, Los Angeles, Cal., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen. by Donald A. Couvillon, Washington, D.C., for defendants.

## ORDER GRANTING MOTION FOR FEES, COSTS AND EXPENSES

JAMES LAWRENCE KING, Chief Judge.

In an earlier ruling in this matter, the court described in detail its findings of fact and conclusions of law relating to the merits of the plaintiffs' claims. In part, the court described this case as:

> [Involving] thousands of black Haitian nationals, the brutality of their government, and the prejudice of ours. Perhaps thirty thousand Haitians have flocked to the shores of South Florida over the past twenty years, fleeing the most repressive government in the Americas. From among that group come the plaintiffs: five thousand persons who have sought political asylum in the United States. They Claim that if they are returned to Haiti they will face persecution, imprisonment and death. All their asylum claims were denied by the Immigration and Naturalization Service.

*Haitian Refugee Ctr. v. Civiletti*, 503 F.Supp. 442 at 450 (S.D.Fla.1980).

After an exhausting trial, the court found that during the Spring and Summer of 1978 the Immigration and Naturalization Service [INS] had established a Haitian Program for the purpose of disposing of asylum claims filed by Haitian immigrants. The court further found that that program was intended to and did result in prejudicial actions and did violate the due process rights of the plaintiffs. 503 F.Supp. at 510–11. The court concluded:

> Those Haitians who came to the United States seeking freedom and justice did not find it. Instead, they were confronted with an Immigration and Naturalization Service determined to deport them. The decision was made among high INS officials to expel Haitians, despite whatever claims to asylum individual Haitians might have. A Program was set up to accomplish this goal. The Program resulted in wholesale violations of due process, and only Haitians were affected.

503 F.Supp. at 532.

The court then enjoined the defendants from expelling or deporting any members of the plaintiff class, from initiating continuing, or otherwise proceeding with deportation hearings for members of the plaintiff class, and from further processing asylum applications to the District Director of the plaintiff class until such time as the court had approved the defendants' plan for reprocessing the plaintiffs' applications. 503 F.Supp. at 532–33. This injunction was affirmed by Unit B of the United States Court of Appeals, Fifth Circuit, but modified to allow the INS to act under the regulations and procedures that had been in existence prior to the implementation of

the Haitian Program. *Haitian Refugee Ctr. v. Smith,* 676 F.2d 1023 at 1041 (5th Cir. Unit B 1982).

The court is now faced with the question of whether and, if so, to what extent the attorneys who championed the Haitian plaintiff's rights should be compensated for their efforts. This matter was referred to the Honorable Charlene H. Sorrentino, United States Magistrate, for a report and recommendation on the merits of the plaintiffs' motion for attorney fees made pursuant to 28 U.S.C. § 2412(d). The Honorable Magistrate has made detailed findings and recommendations and set those out for this court's consideration in her Preliminary Report of United States Magistrate on Motions for Costs, Fees, and Expenses and her Final Report of the United States Magistrate. The court largely accepts the Magistrate's findings and recommendations however the court does disagree with certain particular issues in the Magistrate's reports. Except as modified by the following portions of this order, the Magistrate's findings and recommendations as set forth in her Preliminary and Final Reports will be accepted by this court and shall become the opinion and rulings of this court.

In summary, the Magistrate's Preliminary Report recommended that the defendants two motions to strike the application for plaintiffs' attorneys fees and costs be denied. For the reasons stated by the Magistrate, the court will deny the two motions to strike.

Second, the Preliminary Report recommended that this court not rule on the issue between the Legal Aid Foundation of Los Angeles and The National Center for Immigrants' Rights, Inc., because that dispute is not part of the present lawsuit. For the reasons stated by the Magistrate, the court will make no ruling on this dispute. The court will deal with the matter of fees to be awarded to Peter A. Schey with him individually. However, the court will caution all parties that the award of fees to Peter A. Schey rather than to one of his alleged employers is in no way based on a consideration of the relative claims of any of these

three disputants. The court will pay the fees directly to Mr. Schey but he may be bound by contract or law to accept those fees only as agent for one of the other disputants. The court simply leaves that dispute to be resolved in other legal proceedings or, more hopefully, by settlement between the disputants.

Next, the Preliminary Report recommended that the court find the defendant's argument that 28 U.S.C. § 2412(d) is inapplicable to fees and expenses incurred prior to October 1, 1981, is without merit. For the reasons stated by the Magistrate, the court so finds that this contention of the defendant is without merit. *Knights of the K.K.K. v. East Baton Rouge Parish School Board,* 679 F.2d 64 (5th Cir. Unit A 1982). This suit was pending on October 1, 1981, and 28 U.S.C. § 2412 applies to the determination of the award of fees and costs in this suit.

Fifthly, the Preliminary Report recommended that the plaintiffs' application for attorneys' fees and expenses incurred in the administrative proceedings before the INS be denied. For the reasons stated in the Preliminary Report, this application for fees and expenses in the administrative proceedings will be denied. As stated by the Magistrate, this denial is without prejudice to the plaintiffs' rights for fees should they have eventually succeeded in the administrative proceedings.

The Magistrate's sixth Preliminary Report recommendation was that the defendant's contention that the plaintiffs did not substantially prevail in this law suit should fail. The court will accept this recommendation. The government's contention that the plaintiffs did not prevail in this lawsuit is rejected. Further, the court also rejects the government's objection to the Preliminary Report on the ground of severable legal issues. The government's objection to the report is that the plaintiffs' award of fees and costs should be decreased by the amounts that can be allocated to the prosecution of the claim concerning conditions in Haiti. The government contends that that issue is severable from the other issues in

the suit and that since the plaintiffs did not prevail on that issue the award should not include amounts incurred in pursuit of that issue. The government noted in its brief that the propriety of limiting the recovery of fees in the above manner was likely to be addressed by the United States Supreme Court in *Hensley v. Eckerhard,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Supreme Court has in fact decided this issue in terms of the analogous statute 42 U.S.C. § 1988:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart,* 103 S.Ct. 1933, 1943 (1983).

■ In the case at bar, this court actually accepted the plaintiffs' position and arguments concerning the conditions in Haiti. However, the Court of Appeals disagreed with this court's rulings on the conditions in Haiti to the extent that this court had ruled on the merits of the plaintiffs' request for asylum. 676 F.2d at 1042. But even as it excluded this court's ruling on the merits of the requests for asylum, the Court of Appeals held that the presentation of evidence concerning the conditions in Haiti was relevant and admissible for the purpose of showing the scope of evidence available to the plaintiffs to support their asylum claims and thus to corroborate their due process contention. 676 F.2d at 1042.

Because the conditions in Haiti were relevant to the plaintiffs prosecution of this suit and because the plaintiffs won substantial relief, the court finds that the amount of fees and costs detailed below is reasonable in relation to the results obtained in this suit. The court finds further that the amount of fees should not be reduced simply because the plaintiffs did not prevail in this suit on their claim for asylum. The actual results obtained more than justify the fee awarded herein.

■ The last recommendation of the Magistrate in the Preliminary Report is that the plaintiffs be found to qualify under 28 U.S.C. § 2412(d)(2)(B) as parties eligible to be awarded fees. For the reasons stated by the Magistrate, the court finds that the plaintiffs are parties eligible to be awarded fees pursuant to this statute.

In her Final Report, the Magistrate made recommendations concerning costs allowable under 28 U.S.C. § 2412(a) and 28 U.S.C. § 1920 and recommendations concerning attorneys' fees and other expenses allowable pursuant to 28 U.S.C. § 2412(d). For the reasons stated by the Magistrate, the court will accept the Magistrate's findings and recommendations as to the costs allowable under 28 U.S.C. § 2412(a) and 28 U.S.C. § 1920 and as to expenses allowable under 28 U.S.C. § 2412(d). However, the court disagrees with the Honorable Magistrate as to the proper hourly rate to be applied to some of the attorneys in this case. Therefore, the court will accept the Magistrate's recommendations as to the attorneys' fees allowable pursuant to 28 U.S.C. § 2412(d) only to the extent that the Magistrate found that the fees were allowable and as to the number of billable hours performed by each attorney. Further, the court disagrees with the Honorable Magistrate as to the application of 28 U.S.C. § 2412(d) to hours performed by a new law firm hired solely for the purpose of prosecuting the application for attorney fees.

Because there are several attorneys claiming fees in this case, it may be helpful for the court to outline how the following discussion will proceed. First the court will discuss the government's contention that it was substantially justified in defending this action or, alternatively, that there are special circumstances that render an award of fees unjust. Having rejected the

government's argument on that issue, the court will then discuss the 'methodology to be used in determining an appropriate fee under § 2412(d). Finally, the court will apply the then established methodology to each attorney claiming fees. Where the issue has been raised, the court will also discuss the application of § 2412 to attorneys hired solely to prosecute the application for fees and costs. The appropriate hourly rates and billable hours having been established for each attorney, the court will conclude with a finding of the total dollar amount to be awarded to each attorney.

One of the obstacles that must be overcome by a party seeking fees and expenses from the United States as an opposing party, pursuant to § 2412(d), is that the United States must not have acted with substantial justification. Further, fees and expenses may not be awarded where special circumstances make an award of such fees and expenses unjust. 28 U.S.C. § 2412(d)(1)(A). In *Knights of the K.K.K. v. East Baton Rouge,* 679 F.2d 64 (5th Cir. Unit A 1982), the Court of Appeals explained:

> Neither the Act nor the legislative history provides a conclusive answer as to whether the "position" for which substantial justification must be shown is the United States' litigation position or the United States' posture in its pre-trial actions.... The test of whether or not a government action is substantially justified is essentially one of reasonableness.... Where the Government can show that its position had a reasonable basis both in law and fact, no award will be made. This standard represents a middle ground between an automatic award of fees and a restrictive position which would have required the prevailing party to show that Government action was "arbitrary, frivolous, and groundless."... The "special circumstances" exception provides a safety valve for the Government when it is advancing in good faith a credible, though novel, rule of law. (citations omitted).

679 F.2d at 68.

Further, the burden of demonstrating substantial justification rests with the government. *Citizens Bank, Valley Head, Ala. v. U.S.,* 558 F.Supp. 1301 (N.D.Ala. 1983). That court also explained the purpose of 28 U.S.C. § 2412(d):

> The basic purpose of the EAJA [Equal Access to Justice Act], as its name implies, is to equalize private litigants with Uncle Sam so that Uncle Sam's logistical capability cannot be used to oppress or to hassle his opponents in court without risk to the budget of the particular department or federal agency involved.

558 F.Supp. 1301.

■ In the case now before the bar, the record makes it clear beyond question that the individual plaintiffs were purposely denied constitutional rights by a government program specifically created to facilitate the plaintiffs' deportation without regard to their request for asylum. The Court of Appeals found that "it straine[d] credulity to assert that these plaintiffs were given a hearing on their asylum claims at a meaningful time and in a meaningful manner." *Haitian Refugee Ctr. v. Smith,* 676 F.2d at 1039–40. "In sum," the court states, "via the Haitian program, the government created conditions which negated the possibility that a Haitian's asylum hearing would be meaningful in either its timing or nature. Under such circumstances, the right to petition for political asylum was effectively denied." 676 F.2d at 1040.

It is clear, and the court so finds, that in this case the Immigration and Naturalization Service of the United States used its considerable resources to oppress the plaintiff class and deprive the plaintiffs of constitutional rights. Application of § 2412 to these facts is appropriate and consistant with the purpose of the Act to equalize private litigants with the United States government. The court further finds that the government's position both before and during the litigation was not substantially justified. Since the facts are clear that the government consciously developed the Haitian program to facilitate deportation of the plaintiffs without consideration of re-

quests for asylum, it would be inappropriate for the court to now rule that the government's defense in this action was substantially justified. As the Court of Appeals has already held, it strains credulity to assert that these plaintiffs' due process rights were protected by the Haitian Program; but that is the position the government now takes to prove their defense was substantially justified.

The court finds that the government's defense of this action was not substantially justified and that there are no special circumstances that would make an award of costs and expenses unjust. Accordingly, the court grants the plaintiffs' motion for costs and fees.

The starting place for determining the amount of fees to be awarded is § 2412(d)(2)(A). That section of the statute provides:

> ... (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

The plaintiffs have cited the legislative history of § 2412 for the proposition that the determination of the appropriate fee to be awarded should begin with an inquiry into the prevailing market rates of the kind and quality of the services furnished. Should that amount exceed $75.00 per hour then the court must determine if the case justifies the award being increased above $75.00. The legislative history states:

> The definition establishes that fees are to be based on the prevailing market rate for the kind and quality of services rendered. However, no attorney or agent may be compensated at a rate in excess of $75.00 per hour unless special factors justify a higher fee. Such factors would include, but are not limited to, an increase in the cost of living or the limited

availability of *qualified attorneys with expertise in the particular proceeding involved* ...

> In general, consistent with the above limitations, the computation of attorneys' fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant in the computation of compensation under the Act. *In short, the award of fees is to be determined according to general professional standards.*

H.R.REP. No. 1418, 96th Cong., 2d Sess. at 14–15 (1980); S.Rep No. 253, 96 Cong., 2d Sess, at 16–17 (1980) (emphasis added).

In *Citizens Bank, Valley Head, Ala. v. U.S.*, 558 F.Supp 1301 (N.D.Ala.1983), the court found that the standard for "setting fees in the Eleventh Circuit [has] been set out on *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." The court then explained that the $75.00 limit established by § 2412(d)(2)(A) is only a new factor to be considered in conjunction with the twelve factors established by *Johnson*. The $75.00 limit simply places a cap on the allowable fee unless the court finds a "special factor" that justifies a higher fee. 558 F.Supp. at 1304.

■ The court is persuaded that the basis it should start with in determining the appropriate rate per hour is the prevailing market rate for the kind and quality of the services furnished. The statute expressly states, and the legislative history confirms, that the amount of fees awarded is to be computed at the market rate *except* where that amount exceeds $75.00 per hour. The only two logical alternatives would be to start by arbitrarily selecting some figure below $75.00 or to start at the $75.00 limit and try to decide if the figure should be increased or decreased. The statute clearly rejects these two alternatives and expressly states that the starting point is to be the prevailing market rate. When that

rate exceeds $75.00 per hour then the inquiry turns to whether a rate higher thatn $75.00 is justified.

The twelve factors established by *Johnson* as the factors to be considered in determining a reasonable rate will be petinent both in determining the prevailing market rate and in determining whether the circumstances of a given case justify an increased award. In fact the prevailing market rate should often be the exact rate that would be established by a straight appolication of the *Johnson* criteria. That is because the *Johnson* court found its attorney fee guidelines to be consistent with those recomended by the American Bar Association's Code of Professional Responsibility. *Johnson*, 488 F.2d at 719. The court emphasizes that it finds its application of § 2412 today to be completely compatible with the approach established by *Johnson;* the twelve *Johnson* criteria will be relevant to the determination of attorney's fees under § 2412. However, the court notes that to the extent that § 2412 and *Johnson* might be viewed as inconsistent, the methodology established by the statute § 2412, with an effective date of October 1, 1981, must control instead of the methodology of *Johnson*, which construed another statute in 1974.

As Justices Brennan, Marshall, Blackman and Stevens recently said of the attorney fees provision of 42 U.S.C. § 1988, the fees provision of § 2412 is intended to attract competent counsel to plaintiffs with bona fide claims without producing windfalls to those attorneys who are so attracted. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1945, 76 L.Ed.2d 40 (1983) (Brennan, J., Marshall, J., Blackmun, J., and Stevens, J., concurring in part and dissenting in part). The private attorney generals' counsel should not become rich at the public's expense but neither should he be clothed in rags and deprived of his livelihood just because he has answered the cries of an oppressed plaintiff with sufficient skill and training to win the day.

Turning now to the application of this methodology to the facts of each attor-

ney's claim, the Magistrate found that Ira J. Kurzban has itemized 138 hours of in court time and 932.95 hours of out-of-court time and the Mr. Kurzban has requested a fee of $125.00 per hour for all of these hours. The Magistrate also found that Mr. Kurzban is an extremely capable lawyer of widely recognized legal skill and dedication to the poor and disadvantaged. He often undertakes unpopular causes on their behalf, as he did in this case. This lawsuit was his creation, and his legal and organizational abilities brought it to fruition. The results achieved for the plaintiffs are beyond monetary value. The Magistrate then recommended that Mr. Kurzban be compensated at the maximum allowable rate of $75.00 per hour for all in-court hours claimed and $50.00 per hour for all-of-court hours claimed. The Magistrate specifically rejected the government's contention that Mr. Kurzban's hours should be reduced because he had not kept adequate records.

Mr. Kurzban has objected to the Magistrate's Reports on several grounds. First, he contends that the starting point should have been the prevailing market rate. Since, the evidence established that that rate was higher than $75.00 per hour, he argues that the Magistrate should then have considered and found special circumstances to allow Mr. Kurzban a higher rate. The special circumstances asserted by Mr. Kurzban in his unrebutted testimony are:

I received bomb threats, I received letters threatening my life. We received telephone calls in our office threatening me and threatening other people in the office. I honestly believe that it has affected us substantially in our business. You know, people have come to know me as representing the Haitians. Some people don't like that. Some people who may be involved in commercial interests or other interests may see that in a very adverse way, and I think that has affected our ability in certain circumstancs concerning clients.

I'm in a little different position from all the other people who are claiming attor-

neys' fees because I am the only one who is in private practice. It has been an enormous drain on the ability of our firm basically to function. I mean, one of the reasons why we wound up hiring a third attorney and then ultimately a fourth attorney, is because I was spending an enormous amount of time doing this litigation and was unable to do other lucrative litigation.

The record further reflects that this case was extremely complex. This was the first class action involving thousands of persons claiming political asylum and the first challenge to a government program to expel a particular nationality from the United States. It was the first application and interpretation of the principles of the U.N. human rights protocol, relating to the status of refugees, to the practices and policies of the United States Government. The difficulty of this case was increased by the government's strong determination to deport the Haitians, by the translation problems in dealing with thousands of clients and witnesses from another culture and who were not accustomed to trusting the rule of law; and by the tremendous time pressures imposed by the actions of I.N.S. Finally, there is the issue of lack of available counsel. This case was viewed by the legal community as involving a tremendous commitment of time with no guarantee that the lawyers would ever be compensated for their efforts. Under these circumstances, only a few lawyers were willing to accept the task. The Court of Appeals held that there were no more than a dozen lawyers available to represent the thousands of Haitians involved. *Haitian Refugee Ctr. v. Smith*, 676 F.2d at 1031. The record reflects that Mr. Kurban requested other attorneys to assist and they refused to participate. A lawyer who declined to participate stated that he did so because the case would involve such an immense amount of time, because it involved a potential life and death situation for the clients if the lawyers lost, and because, in the beginning, there was really no hope of being awarded attorney's fees.

The court, having considered the evidence, the Report of the Magistrate and the memoranda of the parties, finds that the prevailing market rate for an attorney of Ira Kurzban's qualifications and expertise at the time and in the location of this trial, was, at a minimum, $125.00 per hour. The court finds further that the prevailing market rate did not differentiate between in-court and out-of-court hours. Finally, the court finds that the application of the twelve *Johnson* criteria to the facts of this case leads the court to the conclusion that, as to Mr. Kurzban, the statutory maximum should be adjusted upward to the minimum prevailing market rate, $125.00 per hour, because of special factors inherent in this litigation. The court further finds that the total award of attorney's fees should be increased by 6% as a cost of living adjustment.

Eleven of the twelve *Johnson* criteria weigh in favor of this upward adjustment. This case involved an enormous commitment of time and effort without any promise of compensation. This case was the first major challenge to a program designed to facilitate the wholesale deportation of an entire nationality. In order to prevail over the tenacious efforts of the government counsel Mr. Kurzban had to be, and was, highly skilled and fully prepared. The time commitment of this case necessarily precluded Mr. Kurzban's office from other more lucrative employment. But, even beyond that, the public hostility at the time toward the plaintiffs in this case caused a substantial loss of legal business to Mr. Kurzban. As previously found, $125.00 per hour is the minimum customary fee for litigation of this type in this legal community. The risk of contingency was higher than the normal contingent fee case because even if successful, no fund was created from which the lawyers could be awarded a fee. The plaintiffs did not have any money to pay fees to the lawyers. The case involved constant demanding time limitation. The case involved human rights of incalculable value to the plaintiffs and Mr. Kurzban was completely successful in asserting those rights. The end result of

the litigation was that INS was prevented from deporting plaintiffs without providing proper hearing on their political asylum claims. As the Magistrate found, Mr. Kurzban is well recognized for his experience, reputation and ability in this field of law. This case was undesirable from the standpoint of an attorney because the local community and I.N.S. was hostile to the Haitian plaintiffs. But the case was of the most social value because it challenged a discriminatory and prejudicial government program that had been designed to deprive the plaintiffs of their constitutional rights. And, lastly, these clients had no prior professional relationship with Mr. Kurzban, other than this case, that would cause him to discount their fee.

Accordingly, the court sets an attorney fee for Mr. Ira Kurzban at the rate of $125.00 per hour for 1070.95 hours, or a total of $133,868.75 plus 6% cost of living increase over the years involved. The total award of attorney's fees for Mr. Kurzban is $141,900.87.

■ As to attorney Vera A. Weisz, the court finds that the prevailing market rate for an attorney of her qualification and expertise, at the time and place of this trial, is $60.00 per hour. The prevailing market rate did not differentiate between in-court and out-of-court hours. Further, the court finds that Ms. Weisz had a total of 420.5 billable hours. Accordingly, Ms. Weisz is awarded an attorney fee at the rate of $60.00 per hour for 420.5 hours, or a total fee of $25,230.00.

■ As for Mr. Peter A. Schey, the court finds that he has claimed a total of 1,711.41 hours, 59% more hours than his co-counsel Mr. Kurzban. However the Magistrate has recommended that these hours be reduced because of poor record keeping. The court finds it appropriate to reduce the total number of hours claimed by Mr. Schey by 40%. The court finds the proper hours expended by Mr. Schey to be 1026.84. The court further finds that the prevailing market rate for an attorney of Mr. Schey's qualifications and expertise at the time and place of the trial is $125.00 per hour and

that the prevailing market rate did not differentiate between in-court and out-of-court hours. For the same reasons stated in consideration of the fee increase for Mr. Kurzban, the court finds that Mr. Schey's hourly rate should be adjusted up from the $75.00 limit to the prevailing market rate of $125.00. Accordingly the court will award Mr. Schey attorney's fees at the rate of $125.00 per hour for 1026.846 hours. That gives a total award for attorney's fees to Mr. Schey of $128,355.75.

■ As for Mr. Timothy S. Barker, the court finds that like Ms. Weisz, Mr. Barker was a young lawyer whose function in this case was primarily as the assistant to Mr. Schey. For that reason, the court finds that the prevailing market rate for Mr. Barker is the same as that for Ms. Weisz, $60.00. Further, the court finds that Mr. Barker should be compensated for 120 billable hours. Accordingly the court will award Mr. Barker a total of $7,200.00 as attorney's fees.

■ As for Mr. Dale Swartz, the court finds that the prevailing market rate for a lawyer of Mr. Swartz' qualifications and experience in the area at the time of the trial was $95.00 per hour. While Mr. Swartz was not a lead counsel like Mr. Kurzban and Mr. Schey, he made a substantial contribution to this law suit and the same consideration that supports an increased award to Mr. Kurzban and Mr. Schey support an increased award to Mr. Swartz. Mr. Swartz' employer is the party who has actually applied for an award of fees for Mr. Swartz' efforts and Mr. Swartz' is no longer before the court himself. His employer, The Lawyers' Committee for Civil Rights Under Law, has asked the court for compensation at the rate of $100.00 per hour for in-court and out-of-court hours and of $50.00 per hour for travel time. The court finds that Mr. Swartz' time should be compensated at the rate of $95.00 per hour for in-court and out-of-court time and at the rate of $50.00 per hour for travel time. The court finds that the total number of Mr. Swartz' billa-

ble hours is 780 hours in-court and out-of-court and 37 hours travel time, both to be adjusted downward for poor record keeping. Those rates and hours total $74,100 for in-court and out-of-court time and $1,850 for travel time. This amount will be reduced by 10% for poor record keeping, leaving a total fee award of $68,355.00. This amount will be paid to Mr. Swartz' employer, The Lawyers' Committee for Civil Rights Under Law. The court has not increased Mr. Swartz' or Mr. Schey's awards for the cost of living because it finds that that would be inconsistent with a simultaneous reduction for poor record keeping. The court has not increased the award to Ms. Weisz and Mr. Barker for the cost of living because the statute allows such an increase only when the prevailing market rate is above $75.00 per hour.

■ Finally the court turns to the attorney's fees claims of Thomas R. Kline and Rebecca L. Hudsmith. The Magistrate has recommended that no fees be allowed for the efforts of these lawyers because they have acted only in pursuit of the claim for fees; they were not lawyers involved in this case on the merits. The court finds, however, that the time spent pursuing a fee claim is compensable. *Johnson v. State of Mississippi*, 606 F.2d 635. The claimants explain that they have been retained to pursue the fee claim of Dale Swartz because he is no longer employed by The Lawyers Committee for Civil Rights Under the Law. The court finds this explanation to be satisfactory and finds that to deny these claimants their fees would dilute the fee award and be contradictory to the purpose of the statute.

■ Mr. Kline has asked the court to compensate him at the rate of $100.00 per hour for 10.25 hours in court, $75.00 per hour for 148.25 hours out-of-court and $50.00 per hour for 5.75 hours of travel time. The court finds that these rates are consistent with the evidence in this case on the prevailing market rate. However, because Mr. Kline's efforts were not clouded by the many and various problems that Mr. Kurzban, Mr. Schey and Mr. Swartz faced in their prosecution on the merits, the court will not adjust his fee upward for the 10.25 hours of in-court time. The court does hereby award Mr. Kline an attorney's fee of $75.00 per hour for 158.5 hours of in-court and out-of-court time and an award of $50.00 per hour for 5.75 hours of travel time for a total fee award of $12,175.

■ Ms. Hudsmith has requested compensation of $65.00 per hour for 18.75 hours of out-of-court time. The court finds that Ms. Hudsmith's role in this case is similar to that of Ms. Weisz and Mr. Barker. Accordingly, the court finds the prevailing rate for Ms. Hudsmith's efforts is $60.00 per hour. The court awards Ms. Hudsmith an attorney's fee of $60.00 per hour for 18.75 hours of out-of-court time, for a total fee award of $1,125.00.

As previously stated, this court makes no consideration of the relative rights of the various employers and individual attorneys to the fees, costs and expenses awarded.

■ The court previously held that it would accept the Magistrate's recommendations as to the costs and expenses. One exception to this ruling is the matter of the expenses claimed by Mr. Kline. The court finds those expenses fair and reasonable and will allow those in addition to the award of attorney's fees.

The total amounts to be awarded, be category and claimant is:

| ATTORNEY | COSTS | ATT. FEES | EXPENSES | TOTAL |
|----------|-------|-----------|----------|-------|
| KURZBAN | $22,974.89 | $141,900.87 | $24,668.56 | $189,544.32 |
| WEISZ | NONE CLAIMED | 25,230.00 | NONE CLAIMED | 25,230.00 |
| SCHEY | DENIED | 128,355.75 | DENIED | 128,355.75 |
| BARKER | NONE CLAIMED | 7,200.00 | NONE CLAIMED | 7,200.00 |
| LAYWER COMMITTEE (SWARTZ) | 1,825.70 | 68,355.00 | 6,111.86 | 76,292.56 |
| KLINE | NONE CLAIMED | 12,175.00 | 1,172.34 | 13,347.35 |
| HUDSMITH | NONE CLAIMED | 1,125.00 | NONE CLAIMED | 1,125.00 |
| TOTALS | $24,800.59 | $384,341.62 | $31,952.77 | $441,094.98 |

The court finds that these amounts are both necessary and adequate to compensate and reimburse the parties for their time effort and expenditures. The court further finds that these amounts are awarded in full compliance with the various statutes previously discussed.

For these reasons, the court does:

ORDER and ADJUDGE that the motion for attorneys' fees, costs and expenses be, and it is, granted. Mr. Ira Kurzban is awarded $189,544.32 for fees, costs and expenses.

ORDER and ADJUDGE that Ms. Vera A. Weisz be awarded $25,230.00 as attorneys' fees.

ORDER and ADJUDGE that Mr. Peter A. Schey be awarded $128,355.75 at attorney's fees.

ORDER and ADJUDGE that Mr. Timothy S. Barker be awarded $7,200.00 as attorney's fees.

ORDER and ADJUDGE that The Lawyers Committee for Civil Rights Under Law be awarded $76,292.56 as attorney's fees, costs and expenses for Mr. Dale Frederick Swartz.

ORDER and ADJUDGE that Mr. Thomas R. Kline be awarded $13,347.35 as attorneys' fees and expenses.

ORDER and ADJUDGE that Ms. Rebecca L. Hudsmith be awarded $1,125.00 as attorneys' fees.

Execution on this judgment shall issue on July 1, 1984 if the sums awarded in this judgment are not paid prior to that time.

Post judgment interest shall apply to all the above specified fees from July 1, 1984, until paid at the rate of 10% per annum.